UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANNE SERBY,

                     Plaintiff,

          - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION; THE CITY OF NEW YORK;
JOEL I. KLEIN, *Chancellor of the City School
District of the City of New York*; MIATHERESA
PATE-ALEXANDER, *Principal of IS 109 Q*;
KARLEEN ADAM COMRIE, *Assistant
Principal of IS 109 Q*; and LENON MURRAY,
*Community Superintendent of NYS School
District 29*,

                    Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
09-CV-2727 (RRM)(VVP)

ROSLYNN R. MAUSKOPF, United States District Judge.

       Plaintiff, formerly a probationary science teacher employed by the New York City

Department of Education, brings this action against her former employer, the City of New York

and several individual defendants alleging violations of the Family and Medical Leave Act, 29

U.S.C. §§ 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, N.Y. Exec. Law §§

290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§

8-101 *et seq.* ("NYCHRL").  Presently before the Court are defendants'  motion for summary

judgment and plaintiff's cross-motion for partial summary judgment pursuant to Federal Rule of

Civil Procedure 56.  For the reasons stated below, defendants' motion for summary judgment is

GRANTED and plaintiff's cross-motion is DENIED.

## BACKGROUND[1]

In August of 2006, plaintiff began working for the New York City Department of Education ("DOE") as a probationary science teacher.  (Defs. 56.1 St. ¶¶ 1, 3.)  For the 2006 to 2007 school year ("2006-07 year"), plaintiff was assigned to MS 42, located in Queens.  (*Id.* ¶ 4.)  Plaintiff's job responsibilities at MS 42 included teaching "four grade levels and over three hundred students."  (*Id.* ¶ 5.)

During the 2006-07 year, plaintiff received mostly negative feedback about her performance, which culminated in a year-end rating of "doubtful."  (*Id.* ¶ 6.)  Riva Madden, the principal of MS 42 ("Principal Madden") conducted plaintiff's first observation on December 11, 2006.  (*Id.* ¶¶ 6-7.)  She observed, in part:  "[c]lassroom management is a major concern.  Too many students are standing and socializing instead of being engaged in the lesson. . . .  Your knowledge of content is good.  It is the organization piece that is missing. . . .  This lesson needs improvement."  (*Id.*; Declaration of Rachael Teitel ("Teitel Dec.") (Doc. No. 34) at Ex. B.)  In late January of 2007, Principal Madden again noted classroom discipline as a concern, and warned plaintiff that without improvement she would receive an unsatisfactory rating.  (Defs. 56.1 St. ¶ 8; Teitel Dec. at Ex. C.)  At the end of that year, Principal Madden rated plaintiff's performance "doubtful."  (Defs. 56.1 St. ¶ 6.)  That "doubtful" rating was subsequently upheld on appeal.  (*Id.* ¶ 10.)

For the 2007 to 2008 school year ("2007-08 year"), plaintiff requested and was granted a transfer from MS 42 to IS 109.  (*Id.* ¶¶ 11-12.)  Defendant Miatheresa Pate-Alexander was the Interim Acting Principal of IS 109 ("Principal Pate-Alexander") and defendant Karleen Adam

---

[1] The following material facts are taken primarily from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the parties' motions for summary judgment and opposition thereto.  The facts are undisputed except as noted.

Comrie, the Assistant Principal for Science at IS 109 ("AP Comrie"), served as plaintiff's direct supervisor.  (*Id.* ¶¶ 14-15.)

Plaintiff's evaluations in her second year of teaching were initially more positive than they had been in her first.  AP Comrie conducted plaintiff's first informal observation at her new school on October 24, 2007, finding plaintiff's lesson "satisfactory."  (*Id.* ¶ 16.)  AP Comrie followed the informal observation about a month later with a formal observation.  (*Id.* ¶ 17.)  Consistent with the evaluations conducted by Principal Madden, AP Comrie praised plaintiff's substantive lesson, but noted a number of classroom management issues.  (*Id.*; Teitel Dec. at Ex. F (recommending:  (1) "[r]eview the ritual and routines of your classroom with students so that they are aware of the manner in which they should walk into your classroom and sit;" and (2) "[a]s you walk around the class I would suggest that you stand in [a] different spot to further evaluate students' work ethics and behavior.  For example:  [redacted] was off task for the most part of the lesson and sitting alone in the last group").)  Nevertheless, AP Comrie rated plaintiff's lesson "satisfactory" and informed plaintiff that "[a]s a new teacher to the school, you are doing very well."  (Defs. 56.1 St. ¶ 17; Teitel Dec. at Ex. F.)

In early to mid-December of 2007, plaintiff discovered she had a tumor on her kidney that would require surgery to remove.  (Pl. 56.1 St. ¶ 18.)[2]  The parties disagree as to the date plaintiff informed her supervisors of her illness and concomitant need to take leave.  AP Comrie testified that she was informed by email on December 23, 2007 (Comrie Tr. (Doc. No. 33-4) at

---

[2] Plaintiff's submissions regarding the exact date she learned of her illness are contradictory.  Plaintiff's electronic Rule 56.1 statement contains two copies of page eight, one of which asserts December 11 and the other of which asserts December 18.  (Pl. 56.1 St. ¶¶ 18-19.)  Plaintiff's courtesy copy of her Rule 56.1 statement includes only one page eight, indicating the date as December 11.  (*Id.*)  Moreover, the record indicates December 18 might be the correct date.  (Pl. Tr. (Doc. No. 33-2) at 58:12-18; P92 (Doc. No. 36-1).)  The precise date is immaterial, however, to the outcome of this motion.

41:10-44:23; P144-145[3] (Doc. No. 36-2)) and that she informed Principal Pate-Alexander thereafter (Comrie Tr. at 47:25-48:5.)  Principal Pate-Alexander testified that she learned about plaintiff potentially taking medical leave from AP Comrie.  (Pate-Alexander Tr. (Doc. No. 33-3) at 14:18-21.)  Plaintiff, on the other hand, claims that she told Principal Pate-Alexander immediately after a December 18, 2007 meeting, and updated her with the surgery details on December 22, 2007.  (Pl. 56.1 St. ¶ 20.)  Plaintiff is less clear about when she told AP Comrie, indicating it was after December 11 or December 18, 2007.  (*Id.* ¶ 19.)[4]

On or about December 18, 2007, Principal Pate-Alexander held a meeting of all the teachers of IS 109.  (Pl. Tr. (Doc. No. 33-2) at 134:2-10; Pl. 56.1 St. ¶¶ 1, 20, 23; Pl. Opp'n (Doc. No. 35) at 2.)  At that meeting, Principal Pate-Alexander announced that teachers were not to take sick leave or to be absent after Christmas break because the school could not afford substitutes.  (*Id.*)  As plaintiff herself concedes, Principal Pate-Alexander was unaware of plaintiff's illness when she made the announcement.  (Pl. Tr. at 134:2-10; Pl. 56.1 St. ¶ 20.) Nevertheless, plaintiff underwent kidney surgery on December 31, 2007 and went out on leave for approximately one month.  (Defs. 56.1 St. ¶¶ 21-22.)  Her leave time was charged to her Cumulated Absence Reserve "sick leave bank," allowing her to receive full salary and benefits throughout her absence.  (*Id.* at 24-25.)  Plaintiff testified that she was not prevented or prohibited from taking medical leave and AP Comrie made all of the necessary arrangements for plaintiff's leave.  (*Id.* ¶ 23; Pl. Tr. at 58:21-59:14.)

Plaintiff returned to work on or about February 4, 2008.  (Pl. 56.1 St. ¶ 1; D352-357 (Doc. No. 36-2).)  Although plaintiff claims that Principal Pate-Alexander delayed her return by requiring her to submit to an examination at the DOE Medical Office, despite plaintiff providing

---

[3] Citations beginning with a "P" or "D" refer to the Bates ranges of a series of documents plaintiff attached to her Rule 56.1 statement.  (Doc. No. 36.)
[4] This allegation is inconsistent between the various versions of plaintiff's Rule 56.1 statement.  *See supra*, n.3.

letters from her doctors clearing her to return,  (Pl. 56.1 St. ¶ 22)  the record reflects that plaintiff obtained work clearance letters from her own doctors only after she had already scheduled an appointment with the DOE.  (D352-357 (Doc. No. 36-2).)  Those letters cleared her for return to work on Friday, February 1, 2008, the same day as her DOE medical appointment, at which the DOE also cleared her.  When plaintiff informed Principal Pate-Alexander of the work clearance letters and her DOE appointment, she requested to return to work on February 4, 2008, which is the day she alleges she returned.  (Pl. 56.1 St. ¶ 1; D353 (Doc. No. 36-2).)

A few months after plaintiff returned to work, she began to receive a series of negative evaluations that eventually led to her termination.  On April 2, 2008, Principal Pate-Alexander conducted an informal observation and found plaintiff's teaching performance to be "sub-standard."  (Defs. 56.1 St. ¶¶ 28-29.)  Principal Pate-Alexander's report made note of classroom management issues.  (*Id*.; Teitel Dec. at Ex. G (noting that "[s]tudents were off task and having several unrelated discussions with classmates," and that "[s]tudents were out of seats and leaving the class without teacher permissions").)  The following week, on April 8, 2008, AP Comrie conducted a formal observation.  (Defs. 56.1 St. ¶ 30.)  AP Comrie rated plaintiff "unsatisfactory."  (*Id*.)  AP Comrie noted that while plaintiff had a firm grasp of the subject matter, classroom management remained a concern.  (*Id*.; Teitel Dec. at Ex. H (noting that:  (1) "[a]s you were talking to the class, several students were having conversation not pertaining to the lesson;" (2) "[a]lthough Ms. Serby was talking, the class was engaged in conversation with each other and was not focus [sic] on what Ms. Serby was teaching;" and (3) "students were still conversing, however Ms. Serby continued on with her lesson, talking over student voices").)  As a result of plaintiff's poor evaluations, AP Comrie recommended inter-classroom visitations to improve discipline problems in the classroom, continued mentoring with fellow teacher Ms.

Hanson and reviewing a book on classroom management.  (Defs. 56.1 St. ¶ 30; Teitel Dec. at Ex. H.)  AP Comrie also performed a "demo" lesson to assist plaintiff in developing improved teaching skills.  (Pl. 56.1 St. ¶ 31.)  The parties dispute whether AP Comrie visited plaintiff's classroom for any further observations, with AP Comrie testifying that she did and saw no improvement.  (*Id.*; Defs. 56.1 St. ¶ 31.)

Samuel Green, a senior teacher at IS 109, and plaintiff's mentor in September and October of 2007, testified that plaintiff shared with him concerns about her struggles with classroom management.  (Defs. 56.1 St. ¶ 32; Pl. 56.1 St. ¶ 32.)  Specifically, he described plaintiff as expressing "concern and anxiety about [the] difficulty she was having in managing her class with regard to discipline."  (*Id.*)  Additionally, Mr. Green testified that, "[he] got the sense she was intimidated by the students.  A lot of it just had to do with a very timid, soft bearing about her. . . . Unless you have an authoritative bearing, you're going to be in over your head."  (*Id.* ¶ 35.)[5]

Plaintiff contends that these observations occurred at a particularly difficult time of the school year.  In late March, shortly before plaintiff's evaluations, the school laid off due to budgetary constraints certain teachers and all remaining teachers, including plaintiff, temporarily fielded larger classes.  (Pl. 56.1 St. ¶ 27.)  Plaintiff also contends that Principal Pate-Alexander conducted her informal observation of plaintiff when the New York state exams were disrupting regular routines.  (*Id.* ¶ 29.)  Nevertheless, at the conclusion of the 2007-08 year in June,

---

[5] Plaintiff does not dispute that she expressed such concerns to Mr. Green.  (Pl. 56.1 St. ¶¶ 32-35.)

Principal Pate-Alexander rated plaintiff's performance "unsatisfactory" and recommended the discontinuance of plaintiff's probationary service.[6]  (Defs. 56.1 St. ¶¶ 36-37.)

The Chancellor's Review Committee reviewed Principal Pate-Alexander's recommendation of discontinuance on September 18, 2008. (*Id.* ¶ 40.)  Plaintiff, who was represented by a union advisor, both testified and presented documents on her own behalf.  (*Id.*; Teitel Dec. at Ex. K.)  Two out of three members of the committee voted to overrule Principal Pate-Alexander's recommendation of discontinuance.  (Defs. 56.1 St. ¶ 42; Teitel Dec. at Ex. K.) The only member of the committee to concur with Principal Pate-Alexander's recommendation, the Chair of the committee, stated:

> The Probationer was providing substandard instruction as evidenced by the two (2) unsatisfactory observations.  The Log of Assistance illustrated the Administration's extensive, 'good faith' attempt to provide support and professional development for the Probationer.  The lack of further observations can be related to the twenty-three (23) consecutive days of absences by the Probationer.  In addition, the Probationer was rated "Doubtful" in her first year of probation by a different rating officer at another school.

(*Id.*)

Plaintiff alleges that the log of assistance referenced by the committee Chair was falsified and therefore not permitted into evidence.  (Pl. 56.1 St. ¶ 40; P91-94.)  She alleges that the log was created after-the-fact and that it contains entries indicating she received assistance on days she was absent due to her illness.  (*Id.*)  The committee record indicates that one single, unidentified document was denied admission because it was "not signed" and was not "meant for file."  (*Id.*; D29 (Doc. No. 36-2).)  The committee's report also references plaintiff's testimony disputing specific entries on the log.  (Teitel Dec. at Ex. K.)

---

[6] Plaintiff contends that her June 18, 2008, "Annual Professional Performance Review and Report on Probationary Service of Pedagogical Employee," which advised her of her unsatisfactory rating for the year, was missing pages necessary to inform her that her service was being discontinued and how she could appeal. (Pl. 56.1 St. ¶ 37.)  It is undisputed, however, that at least by letter dated July 10, 2008, plaintiff was notified that she was being terminated and had already filed an appeal, at least of her rating, before receiving that letter.  (*Id.*; P88, 93, 127.)

Virginia Caputo, Director of the DOE Office of Appeals and Reviews, reviewed the

committee report and adopted the Chair's minority recommendation.  (Defs 56.1 St. ¶ 44.)

Caputo indicated that she had "reviewed the file and the proceedings of the Review" and that she

"concur[ed] with the minority recommendation due to the probationer's unsatisfactory

performance and lack of improvement in spite of professional support."  (*Id.*)  By letter dated,

October 17, 2008, District 29 Community Superintendent Lenon Murray, "reaffirmed the

previous action which resulted in Discontinuance of Probationary Service effective close of

business June 29, 2008."  (*Id.* ¶¶ 43, 45.)

Plaintiff filed the present action on June 25, 2009 alleging violations of the FMLA, the

Age Discrimination in Employment Act of 1967 ("ADEA"), the American with Disabilities Act

of 1990, and a number of New York laws, NYSHRL, New York Executive Law and NYCHRL.

(Compl. (Doc. No. 1).)  After an initial conference, plaintiff withdrew her disability

discrimination claims and her claims under the ADEA.   Left are plaintiff's claims of FMLA

interference and retaliation, and age discrimination under New York state law.  Presently before

the Court is defendants' motion for summary judgment and plaintiff's cross-motion for summary

judgment.  (Doc. Nos. 30-37.)[7]

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories,

admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute

and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the

---

[7] On August 15, 2011, plaintiff filed a letter to update the Court on legal developments allegedly relevant to this case.  (Doc. No. 38.)  The Court has considered the submission and finds it has no effect on the outcome of this motion.

evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable
inferences in favor of the nonmoving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*,
398 U.S. 144, 158–59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d
132, 137 (2d Cir. 1998). The court must not "weigh the evidence but is instead required to view
the evidence in the light most favorable to the party opposing summary judgment, to draw all
reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty
Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d
845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an
inference could be drawn in favor of the non-moving party precludes summary judgment. *See
Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the
nonmoving party must come forward with 'specific facts showing that there is a *genuine issue
for trial*.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
(emphasis in original). However, there must exist more than mere "metaphysical doubt as to the
material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party
must present "concrete evidence from which a reasonable juror could return a verdict in his
favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the
outcome of the suit under the governing law" will properly preclude the entry of summary
judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

In discrimination cases, courts are obliged to exercise particular caution in determining
whether to grant summary judgment, because direct evidence of an employer's discriminatory

9

intent is rare and "must often be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quotation marks and citation omitted); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). However, a plaintiff cannot defeat a summary judgment motion simply by presenting "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Finally, where cross-motions for summary judgment are filed, "a court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Emps. & Rest. Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 543 (2d Cir. 2002) (quotation marks omitted).

## DISCUSSION

### I.    FMLA Claims

The FMLA provides an eligible employee the right to take up to twelve workweeks of unpaid leave due to a serious health condition preventing the employee from performing her job. *See* 29 U.S.C. § 2612(a)(1). Thereafter, the employee has the right to return to the position that she held before taking leave, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. *See* 29 U.S.C. § 2614(a). The FMLA does not allow an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. *See* 29 U.S.C. § 2615(a)(1). Moreover, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting *Nev. Dep't of Human Res. v.*

*Hibbs*, 538 U.S. 721, 724-25 (2003)).  This Circuit has generally recognized two types of FMLA

claims - - "interference" claims and "retaliation" claims.  *Potenza v. City of N.Y.*, 365 F.3d 165,

167-68 (2d Cir. 2004); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 198-99

(S.D.N.Y. 2009); *see also* 29 C.F.R. § 825.220(c) ("The Act's prohibition against "interference"

prohibits an employer from discriminating or retaliating against an employee . . . for having

exercised or attempted to exercise FMLA rights.").  Liberally construed, plaintiff asserts both.

Each claim will be addressed in turn.

           **a.  FMLA Interference**

       To demonstrate FMLA interference under 29 U.S.C. § 2615(a)(1), plaintiff must show,

*inter alia*, that "defendant denied or otherwise interfered with benefits to which she was entitled

under the FMLA."  *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 336 (E.D.N.Y. 2010); *see*

*also* 29 C.F.R. § 825.220(b) (" 'Interfering with' the exercise of an employee's rights would

include, for example, not only refusing to authorize FMLA leave, but discouraging an employee

from using such leave.").  To establish an FMLA interference claim, a plaintiff must demonstrate

that an employer in some manner impeded the employee's exercise of his or her rights protected

by the statute.  *See Di Giovanna*, 651 F. Supp. 2d at 199.

       Initially, plaintiff claimed interference by alleging that she was not returned to the same

conditions of employment following her FMLA leave because she had additional students added

to her classes.  (Compl. ¶¶ 42-43.)  In opposition to defendants' summary judgment motion on

this claim, plaintiff has recast her interference allegations solely as evidence of retaliation.  (Pl.

Opp'n at 3, 11-12; *see also Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)

("Federal courts may deem a claim abandoned when a party moves for summary judgment on

one ground and the party opposing summary judgment fails to address the argument in any

11

way.").)  Given that plaintiff testified she was allowed to return under the same conditions as when she left, and that it was nearly two months before additional students were added to her classes, the Court agrees with plaintiff that her claim, if any, sounds in retaliation,  (*see* Defs. 56.1 St. ¶ 26), and will be addressed below.

Nevertheless, consistent with plaintiff's flexible view of her claims, plaintiff also alleges in her Rule 56.1 statement that she was "discouraged" from utilizing FMLA benefits by Principal Pate-Alexander.  Specifically, plaintiff alleges that Principal Pate-Alexander's warning to all of IS 109's teachers not to use sick leave because the school could not afford substitutes discouraged her from taking FMLA leave.  (Pl. 56.1 St. ¶¶ 1, 20, 23; Pl. Opp'n at 2.)  While this allegation appears nowhere in the complaint, out of an abundance of caution, the Court will briefly address it.  *See Lyman v. CSX Transp., Inc.*, 364 Fed. App'x. 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1183, at 23 n.9 (3d ed. 2004))).

In order to support a claim of interference based on discouragement, plaintiff must show that, "the employer's purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights."  *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535 (S.D.N.Y. 2009); *Golden v. N.Y.C. Dep't of Envtl. Prot.*, No. 06 CIV. 1587(DLC), 2007 WL 4258241, at *3 (S.D.N.Y. Dec. 3, 2007).  Plaintiff has failed to do so.  Plaintiff offers nothing to suggest that the warning was more than a generalized statement discouraging employee absences, undoubtedly common in almost any workplace.  It is undisputed that plaintiff had not yet informed Principal Pate-Alexander of her illness or intention to take FMLA leave when the alleged "discouragement" occurred.  (Pl. 56.1 St ¶ 20; Pl. Tr. at

134:2-10.)  No similarly situated employee of "ordinary resolve" would possibly take such a generalized admonition as discouraging leave for plaintiff's "serious illness."  *See Di Giovanna*, 651 F. Supp. 2d at 201 (finding employer's suggestion that employee spend more time at work during an intermittent FMLA leave did not "interfere" with such leave right); *Reilly*, 620 F. Supp. 2d at 536 (finding employer's objection to leave date as inconvenient was not sufficient to show discouragement).  Plaintiff has presented no evidence to the contrary.

Therefore, to the extent plaintiff alleges an FMLA interference claim, defendants' summary judgment motion is granted and, for the same reasons, plaintiff's motion is denied.

### b.  FMLA Retaliation

An FMLA retaliation claim is analyzed under the well-established *McDonnell Douglas* burden-shifting framework.  *See Potenza*, 365 F.3d at 168.  Pursuant to the *McDonnell Douglas* framework, the burden is initially on plaintiff to prove a prima facie case.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  In order to establish a prima facie case of FMLA retaliation, plaintiff must establish:  (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Potenza*, 365 F.3d at 168.  The initial burden of establishing a *prima facie* case under *McDonnell Douglas* is "minimal."  *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Debell v. Maimonides Med. Ctr.*, No. 09-CV-3491 (SLT)(RER), 2011 WL 4710818, at *8-9 n.4 (E.D.N.Y. Sept. 30, 2011).  If plaintiff establishes a *prima facie* case, the burden then shifts to defendants to articulate "some legitimate, non-discriminatory reason" for their action.  *McDonnell Douglas*, 411 U.S. at 802.  Should defendants carry their burden, plaintiff must then prove by a preponderance of the evidence that defendants' legitimate reasons were not their true

13

reasons, but were merely pretext for retaliation.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  However, "the ultimate burden" of persuading the trier of fact that defendants retaliated against the plaintiff remains at all times with plaintiff.[8]  *Id*.

The only disputed element of the *prima facie* case, for the purposes of these motions, is whether plaintiff's dismissal occurred under circumstances giving rise to an inference of retaliatory intent.  *See Potenza*, 365 F.3d at 168.  Plaintiff's evidence is anemic at best, but given that the *prima facie* burden is "minimal," plaintiff may have met her burden by demonstrating that she was dismissed when "satisfactory" evaluations became negative evaluations following her taking of FMLA leave.  *Schnabel*, 232 F.3d at 87; Pl. Opp'n at 11-12.  For purposes of this motion, the court will assume, without deciding, that plaintiff has established a *prima facie* case. *Di Giovanna*, 651 F. Supp. 2d at 204; *see also Shah v. Eclipsys Corp.*, No. 08-CV-2528 (JFB)(WDW), 2010 WL 2710618, at *11 (E.D.N.Y. Jul. 7, 2010).

Defendants have easily satisfied their burden to "offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge."  *Sista*, 445 F.3d at 169.  Such evidence includes: (1) the doubtful rating plaintiff received her first year, before her FMLA leave, due to classroom management issues; (2) the unsatisfactory formal and informal evaluations referencing classroom management problems; and (3) plaintiff's acknowledgment of her classroom management issues to her co-worker Samuel Green.  Therefore, in order for plaintiff's claims to survive summary judgment, she must demonstrate, at the very least, that defendants considered her FMLA leave as a "negative factor in [their] decision to terminate."

---

[8] Plaintiff urges the Court to apply the "mixed-motive" standard to FMLA retaliation claims.  (Pl. Opp'n at 8-9; *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997) (comparing "pretext" with "mixed-motive" standards).)  Although the Second Circuit has declined to decide which standard applies, it has characterized the "mixed-motive" test as, "present[ing] a greater burden of proof for plaintiffs" than the "pretext" analysis. *Sista*, 445 F.3d at 177 (citing *Raskin*, 125 F.3d at 61).  That is, "[t]o warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Id*.  Plaintiff has done nothing of the sort here; therefore, her claim also fails under the "mixed-motive" test.

*Sista*, 445 F.3d at 176; *see also Di Giovanna*, 651 F. Supp. 2d at 205 (requiring plaintiff to show that "filing for FMLA leave was at least one motivating factor"); 29 C.F.R. § 825.220(c) ("By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions.").  Plaintiff fails to do so.

Plaintiff asserts a variety of actions she alleges demonstrate retaliatory intent:  (1) Principal Pate-Alexander's alleged admonition at the December 2007 teacher's meeting to avoid missing any time following Christmas break; (2) the one business day delay between when plaintiff's doctors cleared her to return to work and when plaintiff returned to work after a DOE medical exam; (3) the increased class sizes she managed in late March; (4) an informal evaluation when students were not on a normal routine; (5) another evaluation only four business days thereafter; (6) incomplete receipt of her notice of discontinuance; (7) improper review committee consideration of an allegedly "falsified log of assistance;" (8) the reference to plaintiff's FMLA leave by the Chair of the review committee in reaching his minority recommendation; and (9) Director Caputo's decision to concur with the minority position recommending discontinuance of plaintiff's employment.  None of these allegations has any merit.

Initially, it would be pure speculation to draw an inference of retaliation from the fact that Principal Pate-Alexander asked the teachers to avoid taking sick leave.  Not only is it undisputed that Principal Pate-Alexander was unaware of plaintiff's illness at the time she made the comment, but there is not a scintilla of evidence that Principal Pate-Alexander - - or anyone else - - objected to plaintiff's leave in any way.  (Pl. 56.1 St. ¶ 20; Defs. 56.1 St. ¶ 23.)  With regard to the medical exam, plaintiff has failed to allege that there was anything unusual about the procedure used to return her to work, and in any event, the delay - - to the extent there was any -

- was one business day, during which plaintiff was still on paid leave.[9]  (D352-357; Pl. Opp'n at 2-3.)  Plaintiff's complaint about increased class size is negated by her own testimony that the increase was due to staff lay-offs, and that all of the sixth grade teachers had to manage larger classes.  (Defs 56.1 St. ¶ 27.)

As to the timing of her evaluations - - that the informal evaluation was conducted during a time when the "regular routines" were disrupted, and that both evaluations were within a week of each other - - plaintiff has failed to demonstrate that such practice was unusual, targeted her, or was at all related to her taking FMLA leave.  (Pl. 56.1 St. ¶¶ 28-30.)  That AP Comrie, plaintiff's direct supervisor, quickly followed-up with her own observation after Principal Pate-Alexander's negative evaluation is hardly evidence of retaliation.  Similarly, plaintiff has provided no reason to infer that any missing pages from her final review, to the extent there were any, suggest anything other than a clerical oversight.

As for the alleged "falsified log of assistance," even assuming the log was inaccurate, plaintiff has failed to demonstrate a connection between such entries and her FMLA leave.  Rather, she alleges that she was out on FMLA leave during some of the times the log indicates she received assistance - - suggesting that whoever made those entries either did not know she was on leave, or did not contemplate plaintiff's leave when making them.  (P92-93 (Doc. No. 36-2).)  Moreover, even assuming the Chair of the committee improperly relied upon the log, plaintiff has not demonstrated her FMLA leave played any role in that alleged error.  Finally, the Court fails to understand how Director Caputo's independent decision, in and of itself, to concur with the minority recommendation "due to the probationer's unsatisfactory performance and lack

---

[9] As discussed above, the record plainly indicates that plaintiff had already scheduled her appointment with the DOE Medical Office before she obtained clearance letters from her doctors.  (D352-357 (Doc. No. 36-2).)  Those letters cleared her to return the same day as her DOE appointment, at which she was also cleared.  *Id.*  When she informed Principal Pate-Alexander of her doctors' letters, she requested to return to work on February 4, 2008, and does not contest that she returned on that day.  (*Id.*; Pl. 56.1 St. ¶ 1.)  Such conduct fails to create an inference of retaliation.

of improvement in spite of professional support" supports an inference of discrimination. (Teitel Dec. at Ex. L.)

Plaintiff's remaining contention - - that the Chair of the review committee mentioned plaintiff's FMLA leave in his explanation for the "lack of further observations" - - is also unavailing. (Teitel Dec. at Ex. K.) Plaintiff argues that this is "smoking gun" evidence that the Chair of the review committee voted to uphold her termination based on her FMLA leave. (Pl. Opp'n at 12.) However, plaintiff offers no reason to doubt that this passing reference simply means what it says - - that she was unavailable for observation.

Indeed, the committee report confirms that her leave was not held against her. Although ignored by plaintiff, the report indicates that when the Chair specifically inquired about why plaintiff was not rated unsatisfactory for attendance for missing twenty-three consecutive days, Principal Pate-Alexander responded that plaintiff, "had a severe illness and it would have been inhumane to do so." (Teitel Dec. at Ex. K.) On this record, the only inference for plaintiff is that there might have been time for additional observations had she been at work the entire year. Such would be the case in almost every situation where an employee is terminated for poor performance at some point after taking FMLA leave. Here, plaintiff missed one month out of a ten month school year, and returned for over four months before she was terminated. The FMLA was never intended to be "a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) (quotation marks omitted); *see also Sista*, 445 F.3d at 176 (finding that "the FMLA 'gives no greater job security than that to which the employee would have been entitled prior to taking leave' " (quoting *Hale v. Mann*, 219 F.3d 61, 66 (2d Cir. 2000)); *Di Giovanna*, 651 F. Supp. 2d at 206 (granting

17

summary judgment where plaintiff was "failing at various basic aspects of his job well before his FMLA application, [and] that he continued to have problems after he applied").

Simply put, the uncontroverted record reflects that plaintiff struggled with classroom management in her first year before her FMLA leave, and that those struggles by-and-large continued during her second year.  Moreover, plaintiff acknowledged those struggles in conversations with a co-worker, and plaintiff was eventually terminated because of her classroom management difficulties.  Plaintiff cannot use the FMLA to immunize herself from the DOE's legitimate evaluation system.

Therefore, because defendant has demonstrated legitimate, non-discriminatory reasons for plaintiff's termination, and plaintiff has wholly failed to provide any evidence that those reasons were pretext for unlawful retaliation or discrimination, or that her FMLA leave played any role in that decision, defendants' summary judgment motion is GRANTED.  For the same reasons, plaintiff's motion is DENIED.

**II.     State Law Claims**

The Court, having dismissed all of plaintiff s federal claims, declines to exercise supplemental jurisdiction over plaintiff's state law claims, and dismisses all state law claims without prejudice.  28 U.S.C. § 1367; *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

**CONCLUSION**

For the reasons stated herein, the defendants' motion for summary judgment (Doc. No.

30) is GRANTED, and plaintiff's motion for summary judgment is DENIED in its entirety.  The

Clerk of Court is directed to enter judgment, and close this case.


SO ORDERED.


Dated: Brooklyn, New York
          March 20, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

19